## DWELLING HOUSE INS. CO. v. SAMUEL WEIKEL.

[FILED JANUARY 4, 1892.]

**Insurance:** APPLICATION: WAIVER.   In an action on a policy of insurance the testimony tended to show that the application was filled out by the company's agent who solicited the risk; that the insured was unable to read and not accustomed to transacting much business; that some of the answers in the application were untrue, but there was a conflict in the testimony as to their being read to the insured before the application was signed.   It also appeared that after the loss the company sent an adjusting agent who estimated the loss at a specified sum, for which sum a draft was sent to the insured in full of all demands, which he refused to receive.   *Held*, That the testimony supported the verdict and that the company was liable for the loss.

ERROR to the district court for Cuming county.   Tried below before POWERS, J.

*Uriah Bruner*, for plaintiff in error, cited: *Davis v. Neligh*, 7 Neb., 84, 88; *Altschuler v. Algaza*, 16 Id., 631, 632; *Engster v. State*, 11 Id., 542; *Treadway v. Ins. Co.*, 29 Conn., 69; *State Ins. Co. v. Jordan*, 24 Neb., 358; *State Ins. Co. v. Shreck*, 27 Id., 527; *Reynolds v. Ins. Co.*, 34 Md., 280; Greenl., Ev., 560; *Lee v. Ins. Co.*, 44 N. W. Rep. [Ia.], 683.

*J. F. Losch*, contra, cited: *Cannon v. Ins. Co.*, 11 N. W. Rep. [Wis.], 11; *Alexander v. Ins. Co.*, 2 Hun [N. Y.], 655; *Gans v. Ins. Co.*, 43 Wis., 109; *Goodwin v. Ins. Co.*, 73 N. Y., 492; *Continental Ins. Co. v. Lippold*, 3 Neb., 391; *Susquehanna Mut. Fire Ins. Co. v. Cusick*, 19 Am. Law Rev., 656; 16 W. N. C. [Pa.], 133; *Stone v. Ins. Co.*, 28 N. W. Rep. [Ia.], 47; *Rowley v. Ins. Co.*, 36 N. Y., 550; *Owens v. Ins. Co.*, 56 Id., 565; *State Ins. Co. v. Shreck*, 27 Neb., 527; *Diehlman v. Ins. Co.*, 78 Mich., 141; *Phœnix Ins. Co. v. Barnd*, 16 Neb., 90.

MAXWELL, J.

The defendant in error commenced an action against the Dwelling House Insurance Company of Boston, Mass., to recover for an alleged loss under a policy issued by said insurance company to said Weikel. The policy was written for five years from December 11, 1886, and covered the following described property as being on lot 4, in block 29, in West Point, Cuming county, Neb., viz.: Frame dwelling house, insured for $400; household furniture, for $100; beds and bedding, for $30; wearing apparel, for $100; sewing machine for $35; frame barn, No. 2, with foundation and sheds adjoining, situate 100 feet from dwelling house, for $100; farming implements while on premises, for $168; wagon and harness while on premises, for $80; horses and mules not to exceed $100 on each while on the farm of the insured.

The insurance company in its answer denies each and every allegation of said petition, except that the property covered by said policy was situate on the south twenty-two feet of lot 4, in block 29, in West Point, Cuming county, Nebraska; that the property described was destroyed by fire November 14, 1887, and that Mr. Weikel gave notice of said alleged loss in February, 1888, and alleged that said policy was given upon the written application of Mr. Weikel; that said application by the terms of the policy was made part thereof, and the representations therein contained were warranties on the part of the assured; that Mr. Weikel did not own said lot 4, or any part thereof, at the time of the issuance of said policy, and that said premises and the personal property were incumbered by various mortgages, mechanics' liens, and otherwise, and that the value of said farming implements, wagon, harness, horses, and mules altogether did not exceed $450; that on December 3, 1885, said plaintiff mortgaged said premises to Albert Prucha to secure the payment of a note for $125, payable in two years after its date, which mortgage at the date of said application and ever since has been a lien upon said premises; that said mortgage was foreclosed in the district court of Cuming county on March 29, 1888, and said premises were by decree of the court ordered to be sold to satisfy said mortgage debt; that on December 11 the south twenty-two feet of said lot 4 was incumbered as hereinbefore set forth, and that on said last named date the legal title to said premises was in the plaintiff's daughter Amelia, and so remains; that on January 12, 1887, said plaintiff, by mortgage deed, duly executed and recorded, conveyed the said south twenty-two feet of said lot to one Edmund Krause to secure a note for $110 due and payable October 12, 1887, which said mortgage debt was at the time of the fire, and still is, unpaid.

That on January 24, 1887, said Edmund Krause filed a mechanic's lien against the said dwelling house for the

sum of $127.17, and one Alfred Miller also filed a me-
chanic's lien against the same for $28.75, which said me-
chanics' liens remain unpaid and were and are valid liens
on said premises, by reason of each and all of which said
matters and things said policy became, and is, absolutely
null and void; that on December 12, 1884, said plaintiff
mortgaged to one A. O. Mogul one of the horses included
in said insurance policy and which was burned by the said
fire, to secure the payment of a note of that date for
$71.31, which mortgage debt was at the time of the plaint-
iff's application, and still is, unpaid; that on August 23,
1887, said plaintiff mortgaged to one Rebecca W. T.
Crowell the other horse that was burned by said fire and
included in said insurance policy, to secure the payment of
a note for $38 which at the time of said fire was unpaid
and still is unpaid; that it was provided in and by said
policy "that if the property thereby insured, or any part
thereof, shall be sold, conveyed, incumbered by mortgage
or otherwise, or any change takes place in the title, use,
occupation, or possession thereof, whatever; or if the in-
terest of the assured in said property, or any part thereof, now
is, or shall become any other or less than a perfect, legal, and
equitable title and ownership, free from all liens whatever,
except as stated in writing thereon, or if the buildings or
either of them stand on leased ground or land of which
the assured has not a perfect title, then, and in every such
case, the said policy shall be absolutely void."

That it is provided in said policy that any attempt to
defraud or deceive on the part of the assured, and any mis-
representation in the proofs or examination as to loss or
damage, shall forfeit all claims under said policy; that the
proofs of loss mentioned in the plaintiff's petition, as hav-
ing been furnished this defendant on the 7th day of Febru-
ary, 1888,  *  *  *  concealed the condition of the title
to said premises and the incumbrances thereof, and by stat-
ing the existence of one of said incumbrances only, and

concealing the others hereinbefore set forth, sought to deceive the defendant and misled it into believing that there was only one incumbrance on said premises; and in said proof falsely stated that said property was owned by the assured, all of which was done with the intent to defraud and deceive said defendent.

Mr. Weikel in his reply admitted that he mortgaged said premises to one Albert Prucha on or about the third day of December, 1885, to secure the payment of $125, and that said mortgage has been foreclosed as stated in defendant's answer; and admits that he mortgaged the said premises to one Edmund Krause on or about the 12th day of January, 1887, to secure the payment of $110, * * * and admits that Alfred Miller filed a mechanic's lien against said premises for $28.75, a part of which remained unpaid at the time of said fire, and admits that he gave certain chattel mortgages on a portion of the property afterwards destroyed by fire and insured by said defendant; and alleged that the plaintiff, being unable to read and believing that said application contained only his answers, * * * signed the same, but alleges that the answers to the questions in the copy of the said application attached to said answer were not his answers to questions 5, 6, and 9 therein.

The jury found for the plaintiff and assessed his damages at $317.

The testimony tends to show that the defendant in error is unable to read; that the agent of the plaintiff in error called upon him and solicited the insurance upon the property in question; that such agent filled out the application upon actual view of the property.

The defendant in error testifies that the application was not read to him, but the agent, after filling the same out, requested him to sign the same, which, not being aware of its importance, he did.

The agent, however, testifies that he wrote down the an-

swers of the defendant in error as they were given, and in effect denies the defendant in error's testimony.

The testimony also tends to show that there was no intention to defraud the insurance company; that the defendant in error is comparatively an ignorant man and unaccustomed to doing business, and he seems to have placed great confidence in the agent of the plaintiff in error, with whom he seems to have been acquainted.

The testimony also tends to show that after the fire the plaintiff in error sent an adjuster to examine the loss and he estimated it at about the sum of $240, and a draft for that amount was forwarded to the defendant in error, as payment in full. This the defendant in error refused to receive, and thereupon brought this action.

From the foregoing statement it is evident that the equities of the case are with the defendant in error and the verdict is not excessive.

An insurance company, like any other business agency, must act in good faith with those who enter into contracts with it, and it is not the business of courts to search for pretexts to relieve it from the obligations it has assumed. It has received the premium; it is but justice that it pay the loss.

The judgment is clearly right, and is

AFFIRMED.

THE other judges concur.